UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

PHOENIX ASSET GROUP, LLC,

        Plaintiff,

    v.                                                         21-CV-382-LJV
                                                              DECISION & ORDER
URS SOLUTIONS LLC, *et al.*,

        Defendants.

_____

On March 11, 2021, Phoenix Asset Group, LLC ("Phoenix"), commenced this

action against URS Solutions LLC ("URS"); URS's alleged owner, Gassan Rizek;

Niagara Restitution Services, Inc. ("NRS"); and NRS's alleged owner, Yamal Ramirez.

Docket Item 1.  The action concerns an alleged contract between Phoenix and URS,

whereby URS attempted to collect money owed to Phoenix and received a commission

when it was successful.  Docket Item 3 at ¶¶ 10-11.  Phoenix alleges that at some point

URS began underreporting its collections to Phoenix and shorting Phoenix the money

Phoenix was owed.  *See id.* at ¶¶ 15-16.  Phoenix also alleges that without its consent,

URS outsourced accounts to NRS, who also failed to remit and report its collections to

Phoenix.  *Id.* at ¶¶ 13-14.

On April 15, 2021, the defendants filed an answer raising counterclaims for,

among other things, breach of contract based upon Phoenix's allegedly placing the

same collection accounts with the defendants as well as other collection agencies.

Docket Item 9.  On May 5, 2021, Phoenix moved to dismiss that breach of contract

counterclaim to the extent it was asserted by NRS and Ramirez.[1]  Docket Item 16.  On

May 26, 2021, the defendants responded, Docket Item 19,[2] and on June 1, 2021,

Phoenix replied, Docket Item 20.

For the following reasons, Phoenix's motion to dismiss the counterclaim in part is

granted, but defendants NRS and Ramirez may amend their counterclaim, within 30

days, to address the deficiencies noted below.

## FACTUAL ALLEGATIONS

On a motion to dismiss a counterclaim, the Court "accept[s] all factual allegations

as true," *Trs. of Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt.*, 843 F.3d 561,

566 (2d Cir. 2016), and draws "all reasonable inferences . . . in the counterclaimant's

favor," *Excellus Health Plan, Inc. v. Tran*, 287 F. Supp. 2d 167, 171 (W.D.N.Y. 2003).  In

light of this standard, the answer and counterclaims tell the following story.

Phoenix is "a debt buyer that is engaged in the business of purchasing

charged-off accounts receivable for collection."  Docket Item 3 at ¶ 9; Docket Item 9 at

¶ 9.  Phoenix would contract with other companies, including URS, to collect on the

---

[1] Phoenix also moved to dismiss the defendants' counterclaims against Phoenix for fraudulent misrepresentation and against Robyn Bowman, the sole member of Phoenix, based on alter ego liability.  *See* Docket Item 16.  The defendants do not oppose Phoenix's motion to dismiss those two claims.  Docket Item 19 at 4.  This Court therefore deems them withdrawn and dismisses the counterclaims for fraudulent misrepresentation, *see* Docket Item 9 at ¶¶ 136-44, and alter ego liability, *see id.* at ¶¶ 145-51.

[2] The defendants filed their response a week after it was due, *see* L. R. Civ. P. 7(b)(2)(B), without moving for an extension of time or otherwise accounting for their untimely filing.  Although this Court can and does accept the defendants' late response, the defendants are warned that further failure to comply with motion deadlines may result in this Court's deciding any future motions on Phoenix's papers alone.

accounts Phoenix owned.  Docket Item 3 at ¶¶ 9-10; Docket Item 9 at ¶¶ 9-10.  URS, in turn, would outsource accounts to NRS for collection.  *See* Docket Item 9 at ¶¶ 12, 26.  Phoenix "knew of NRS'[s] involvement and never objected to the outsourcing of accounts to NRS by URS."  *Id.* at ¶ 26.

In the debt collection industry, it is "common practice" for a debt owner to place accounts with a single collection agency and not place those same accounts with another agency.  *Id.* at ¶ 125.  In other words, a debt owner should not "double plac[e]" an account and have multiple agencies competing to collect the very same debt.  *See id.* at ¶ 129-30.  "[I]t was understood between the parties that Phoenix was placing the accounts with [the d]efendants and no other collection agencies."  *Id.* at ¶ 125.  Based, in part, on this understanding, the "[d]efendants agreed to accept . . . accounts from Phoenix and beg[in] collection efforts" on the accounts.  *Id.* at ¶ 126.

At some point, Phoenix began placing the same accounts assigned to URS with two other debt collection agencies, Delta Credit Management, LLC ("Delta"), and Arrow Credit Adjusters, LLC ("Arrow").  *Id.* at ¶¶ 129-31.  Arrow and Delta made collection efforts on the double-placed accounts and "succeeded in collecting monies on accounts . . . assigned to[ the d]efendants."  *Id.* at ¶ 133.  That money "would have been collected by [the d]efendants, and thus, . . . Phoenix deprived [them] of their rightful portion of that income."  *Id.* at ¶ 134.

## LEGAL STANDARD

"A motion to dismiss [a] counterclaim[] is governed by the well-known standard for determining a motion under Rule 12(b)(6) to dismiss for failure to state a claim upon which relief can be granted."  *Wi3, Inc. v. Actiontec Elecs., Inc.*, 71 F. Supp. 3d 358, 360

(W.D.N.Y. 2014).  To survive a motion to dismiss, a pleading must include sufficient factual matter, accepted as true, "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the [party] pleads factual content that allows the court to draw the reasonable inference that the [party opponent] is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a [party] has acted unlawfully."  *Id.*  Although a court is required to accept "all factual allegations as true and draw[] all reasonable inferences in favor of the [counterclaimant]," *Trs. of Upstate N.Y. Eng'rs Pension Fund*, 843 F.3d at 566, it is "not bound to accept as true a legal conclusion couched as a factual allegation," *Twombly*, 550 U.S. at 555 (citation omitted).  Nor will "a formulaic recitation of the elements of a cause of action" suffice.  *Id.*

## DISCUSSION

### I.  MOTION TO DISMISS BREACH OF CONTRACT COUNTERCLAIM

Phoenix argues that to the extent that NRS and Ramirez assert a breach of contract counterclaim based upon alleged double placement of accounts, *see* Docket Item 9 at ¶¶ 123-35, it must be dismissed because NRS and Ramirez do not allege that they were in privity with Phoenix.  Docket Item 16-4 at 9-11.  In other words, Phoenix argues that NRS and Ramirez must allege, but have not alleged, the existence of a contract between Phoenix on the one hand and NRS and Ramirez on the other.  *Id.*

"To state a claim for breach of contract under New York law,[3] [a counterclaim] must allege: [1] the formation of a contract between the parties; [2] performance by [one party]; [3] failure of [the other party] to perform; and [4] damages." *Edwards v. Sequoia Fund, Inc.*, 938 F.3d 8, 12 (2d Cir. 2019). "Liability for breach of contract does not lie absent proof of a contractual relationship or privity between the parties." *CDJ Builders Corp. v. Hudson Grp. Const. Corp.*, 67 A.D.3d 720, 722, 889 N.Y.S.2d 64, 65 (2d Dep't 2009).

Under New York law, a contract need not be express but may be implied in fact:

A contract implied in fact may result as an inference from the facts and circumstances of the case, although not formally stated in words, and is derived from the "presumed" intention of the parties as indicated by their conduct.  It is just as binding as an express contract arising from declared intention, since in the law there is no distinction between agreements made by words and those made by conduct.

*Jemzura v. Jemzura*, 36 N.Y.2d 496, 503–04, 330 N.E.2d 414, 420 (1975) (citations omitted).  The elements of an implied-in-fact contract are the same as those of an express contract: "consideration, mutual assent, legal capacity[,] and legal subject matter." *Maas v. Cornell Univ.*, 94 N.Y.2d 87, 94, 721 N.E.2d 966, 970 (1999). "[S]imilar to express contracts, in order to survive a motion to dismiss, a plaintiff alleging a contract implied in fact must be able to point to sufficient specific, concrete, factual representations such that they could be interpreted to supply the terms of an implied

---

[3] Because jurisdiction in this case is based on diversity of citizenship, the Court applies the choice of law rules of the forum state—here, New York.  *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496–97 (1941).  The parties rely on New York law in their briefs, *see* Docket Items 16-4, 19, 20, and do not seem to dispute that New York law applies in this action.

contract." *OTG Brands, LLC v. Walgreen Co.*, 2015 WL 1499559, at *6 (S.D.N.Y. Mar. 31, 2015) (internal quotation marks omitted).

Here, NRS and Ramirez fail to sufficiently plead the existence of a contract, whether express or implied in fact, between themselves and Phoenix.  In their counterclaim, NRS and Ramirez refer to the agreement "asserted by Phoenix in [the amended c]omplaint."  Docket Item 9 at ¶ 124.  That agreement, however, is alleged to be between only Phoenix and URS.  *See* Docket Item 3 at ¶ 10.  And NRS and Ramirez have not included any allegations in their answer and counterclaims that would permit this Court to reasonably infer that NRS and Ramirez were parties to that agreement either expressly or impliedly.

NRS and Ramirez argue that by referring to the "defendants" and the "parties," the answer and counterclaims state the claim with sufficient particularity to survive a motion to dismiss. *See* Docket Item 19 at 8-9.  But even assuming that references to the "defendants" and the "parties" always include NRS and Ramirez in addition to URS and Rizek, those allegations are nothing more than legal conclusions or naked assertions. For example, even if the allegations that "Phoenix[] assigned delinquent accounts to [the d]efendants in order for [the d]efendants to collect money for Phoenix," *see* Docket Item 9 at ¶ 124, and that the "[d]efendants' actions were authorized by Phoenix," *see id.* at 2, refer to NRS and Ramirez in addition to URS and Rizek, those allegations are simply assertions unsupported by any facts alleged.  NRS and Ramirez do not say whether there was a contract between them and Phoenix; if so, when the contract began, what the offer was, and what constituted acceptance; what the terms of the contract were; or anything else that might provide the basis for a breach of contract

counterclaim for relief that is plausible on its face.  *See OTG Brands, LLC*, 2015 WL

1499559, at *7 ("The [pleading] is utterly devoid of allegations which would give rise to

an inference of an express or implied-in-fact contract . . . . [The pleading party has] not

alleged any words or conduct by either party that constitute offer, acceptance, or mutual

assent and intent to be bound."); *see also Sever v. Glickman*, 298 F. Supp. 2d 267, 272

(D. Conn. 2004) (dismissing breach of contract counterclaim against plaintiff when

counterclaim contained only conclusory allegations that one party "arranged" for a

contract between the other two parties and was authorized to do so).

NRS and Ramirez also argue that by referring to Phoenix's awareness and

consent to URS's placing collection accounts with NRS and Ramirez, they sufficiently

allege a relationship and, therefore, an agreement with Phoenix.  Docket Item 19 at

9-10.  More specifically, NRS and Ramirez allege that the "[d]efendants deny that

accounts were moved from URS to NRS without knowledge or consent of Phoenix,"

Docket Item 9 at ¶ 12; that "Phoenix has known of NRS since at least 2019,[4]" *id.*; and

---

[4] NRS and Ramirez assert that Phoenix knew about NRS since at least 2019 because of a lawsuit filed against NRS, Ramirez, URS, Phoenix, and others in the in the United States District Court for the Eastern District of Texas, *see Sanders v. Niagara Restitution Svcs., Inc.*, No. 6:19-cv-199 (E.D. Tex. May 6, 2019).  Docket Item 9 at ¶ 12. In *Sanders*, the plaintiff alleged that Phoenix "directly or indirectly[] exerted influence" over the collection actions and communications of URS, NRS, and ASG Solutions LLC. *See, e.g.*, *Sanders*, No. 6:19-cv-199, Docket Item 1 at ¶ 99.  Phoenix never appeared in that action, and the case ended in a voluntary dismissal by the plaintiff because the parties "resolved their differences."  *See Sanders*, No. 6:19-cv-199, Docket Item 26 at 1 (E.D. Tex. Mar. 3, 2020).  The fact that NRS and Phoenix were both defendants in a separate action simply alleging that Phoenix exerted influence over NRS sheds no light on whether there is a contract between NRS and Phoenix for the accounts at issue in this case.  At best, *Sanders* suggests that Phoenix knew that someone alleged that Phoenix and NRS were engaged in unlawful collection practices on the same accounts.

that "[e]vidence . . . will show that Phoenix knew of NRS'[s] involvement and never objected," *id.* at ¶ 26.

But that argument fails for several reasons.  First, NRS's and Ramirez's allegations again are nothing more than bare assertions.  Second, NRS and Ramirez must plead more than a just a relationship with Phoenix; they must allege "facts and circumstances" sufficient to infer a contract or to imply a contract in fact.  *See Jemzura*, 36 N.Y.2d at 503–04, 330 N.E.2d at 420.  As explained above, they have not.  Finally, the fact that Phoenix knew about and did not object to NRS's involvement is not sufficient to allege the necessary mutual assent for contract formation.  Under New York law, "absent a duty to speak, a party's silence cannot be translated into an acceptance of an offer to contract." *Bronner v. Park Place Ent. Corp.*, 137 F. Supp. 2d 306, 312 (S.D.N.Y. 2001) (citing *Tanenbaum Textile Co. v. Schlanger,* 287 N.Y. 400, 404, 40 N.E.2d 225, 226-27 (1942)).  NRS and Ramirez have not alleged that Phoenix had a duty to speak or that any other exception applies to the rule that silence generally is not acceptance.

In short, NRS and Ramirez have not alleged any words or conduct by themselves or Phoenix that constitute offer, acceptance, or mutual assent and intent to be bound.  NRS and Ramirez therefore have failed to sufficiently plead a breach of contract counterclaim, and that counterclaim is dismissed without prejudice.

## II.  LEAVE TO AMEND

NRS and Ramirez ask that if this Court finds that they failed to sufficiently plead a breach of contract counterclaim, they be permitted to amend.[5]  Docket Item 19 at 10. Because leave to amend should be "freely give[n] . . . when justice so requires," *see* Fed. R. Civ. P. 15(a)(2), within 30 days of this order, NRS and Ramirez may file an amended answer and counterclaim that corrects the deficiencies noted above.  *See Porat v. Lincoln Towers Cmty. Ass'n*, 464 F.3d 274, 276 (2d Cir. 2006) ("Without doubt, this circuit strongly favors liberal grant of an opportunity to replead after dismissal of a [pleading] under Rule 12(b)(6).").

## **CONCLUSION**

For the reasons stated above, Phoenix's partial motion to dismiss, Docket Item 16, is granted, but defendants NRS and Ramirez may amend their answer and counterclaim, **within 30 days**, to correct the deficiencies noted above.  No later than 30 days after any amended answer and counterclaim is filed, Phoenix may move against or otherwise respond to the amended answer.

SO ORDERED.

Dated:   February 22, 2022
Buffalo, New York


*/s/ Lawrence J. Vilardo*
LAWRENCE J. VILARDO
UNITED STATES DISTRICT JUDGE

---

[5] More specifically, NRS and Ramirez asked for leave to file a motion to amend. Docket Item 19 at 10.  That request is denied as moot.